CLERK'S OFFICE
A TRUE COPY
Jul 24, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

information associated with "JONES MEDICAL LLC (internal Spruce organization entity ID number "entity_0V1DJ59701000"); and Jerry Jones III, MD (Spruce provider entity ID number "entity_0V1DJ597O3000" and/or Spruce account ID "account_0V1DJ58RO2800" that is stored at premises owned, maintained, controlled, or operated by Spruce Health Inc., a distributed company with a mailing address of 548 Market Street, PMB# 83493, San Francisco, California 94104.

Case No. 25-M-472 (SCD)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ____________ District of ____________ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 8-7-25 *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m. ❒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Honorable Stephen C. Dries.

*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ❒ until, the facts justifying, the later specific date of ____________.

Date and time issued: 7-24-25. 1:25 pm

Stephen C. Dries

*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ______________________

______________________________
*Executing officer's signature*

______________________________
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with "JONES MEDICAL LLC (internal Spruce organization entity ID number "entity_0V1DJ59701000"); and Jerry Jones III, MD (Spruce provider entity ID number "entity_0V1DJ597O3000" and/or Spruce account ID "account_0V1DJ58RO2800" that is stored at premises owned, maintained, controlled, or operated by Spruce Health Inc., a distributed company with a mailing address of 548 Market Street, PMB# 83493, San Franciso, California 94104.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I. Information to be disclosed by Spruce Health, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Spruce Health, Inc, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that may have been deleted but are still available to Spruce Health, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Spruce Health, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A for the time period of January 1, 2018 to the date of this warrant's execution:

a. All records affiliated with Jerry JONES III, MD; Jones Medical LLC; phone number 414-240-1005; email jjones5050@hotmail.com; phone number 414-807-5050; Internal Spruce organization entity ID number "entity_0V1DJ59701000"; Spruce provider entity ID number "entity_0V1DJ597O3000"; associated Spruce account ID "account_0V1DJ58RO2800."

b. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c. The types of service utilized by the user;

d. All records or other information maintained in the account, including SMS messages, secure (app to app) messages, faxes, phone calls, emails, video recordings, voice recordings, document uploads, payment information, contact list, patient list, and patient files or medical records, etc.;

e. All records pertaining to communications between Spruce Health, Inc. and any person regarding the account, including contacts with support services and records of actions taken.

Spruce Health, Inc. is hereby ordered to disclose the above information to the government within 7 days of the issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) involving Jerry JONES III, MD (the Spruce Health, Inc. account holder and suspect) since January 1, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Communications regarding the issuance of prescriptions, the discussion and arrangement of the distribution, sale and/or trade of controlled substances between said suspects and potential communications with other sources regarding controlled substances.

(b) Evidence indicating JONES' knowledge of the standards for controlled-substance prescribing and/or his provision of medical care, advice, or direction via the platform;

(c) Evidence indicating how and when the Spruce Health, Inc. account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Spruce Health, Inc. account owner;

(d) Evidence indicating the Spruce Health, Inc. account owner's state of mind as it relates to the crime under investigation;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

(f) The identity of the person(s) who communicated with JONES about matters relating to the distribution, including issuance of a controlled substance prescription, including records that help reveal their whereabouts; and

(g) Patient files, prescription records, medical reports, notes of medical personnel and staff members, office notes, progress notes, medical examination notes, medical diagnoses, appointment records, patient sign in sheets, billing records, test results, laboratory tests, laboratory results, photographs, x-rays, physician orders, history and physical forms, social worker notes, treatment plans, referrals, consultations, correspondence, patient contracts, patient information, demographic information, and certificates of medical necessity.

CLERK'S OFFICE
A TRUE COPY
Jul 24, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

information associated with "JONES MEDICAL LLC (internal Spruce organization entity ID number "entity_0V1DJ59701000"); and Jerry Jones III, MD (Spruce provider entity ID number "entity_0V1DJ597O3000" and/or Spruce account ID "account_0V1DJ58RO2800" that is stored at premises owned, maintained, controlled, or operated by Spruce Health Inc., a distributed company with a mailing address of 548 Market Street, PMB# 83493, San Francisco, California 94104.

Case No. 25-M-472 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ____________ District of ________________, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | Unlawful distribution of controlled substances outside the scope of normal medical practice and not for legitimate medical purposes |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

❒ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MADDIE MORGAN (Affiliate) Digitally signed by MADDIE MORGAN (Affiliate) Date: 2025.07.23 09:42:31 -05'00'

*Applicant's signature*

Maddie M. Morgan, TFO - DEA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 7-24-25

Stephen C. Dries

*Judge's signature*

City and state: Milwaukee, WI

Hon. Stephen C. Dries. United States Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Kerrianne Sundberg, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND INVESTIGATOR BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by Spruce Health Inc., an electronic communications service/remote computing service provider, a distributed company with a mailing address of 548 Market Street, PMB# 83493, San Francisco, California 94104. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Spruce Health, Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customers associated with the accounts, including the contents of communications.

2. I am a Diversion Investigator with the Drug Enforcement Administration ("DEA") and have been since January 2019. I am currently assigned to the DEA Milwaukee District Office. As part of my duties as a DEA Diversion Investigator, I investigate criminal violations involving Title 21, United States Code, and Title 21, Code of Federal Regulations, Part 1300 et seq. In my capacity as a Diversion Investigator, I have conducted and participated in investigations of practitioners, pharmacies and individuals involved in diversion, that is, the unlawful distribution and acquisition of pharmaceutical controlled substances. I am familiar with the usual methods of investigation, including but not limited to, conducting audits, the questioning of witnesses, the use of informants, undercover operations and the review of social media platforms and phone records for communication. I have participated in complex investigations which involved violations of

state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1).

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1) have been committed by Jerry JONES III. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the U.S. District Court for the Eastern District of Wisconsin is "a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

***Background Information***

6. I am conducting an investigation of Jerry Jones III ("JONES"), for his suspected involvment in the unlawful distribution of controlled substances outside the scope of normal medical practice and not for legitimate medical purposes, in violation of Title 21, United States Code, Section 841(a)(1). Pursuant to Title 21, United States Code, Section 841(a)(1) and Title 21, Code of Federal Regulations, Section 1306.04(a), the distribution of controlled substances is

unlawful unless the controlled substances are issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice. The practitioner is responsible for the proper prescribing and dispensing of controlled substances.

7. I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation and my review of: (a) records pertaining to DEA Registrations BJ1801326, FJ4363836 and FJ8819318 (b) Wisconsin Prescription Drug Monitoring Program ("PDMP") records (c) Michigan, Ohio, and Arizona Prescription Monitoring records (d) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; and (e) information obtained from cooperating citizen witnesses.

8. Based on information received from victims, witnesses, prescribing databases and prescription images, there is probable cause to believe that JONES has issued controlled substance prescriptions, and continues to prescribe controlled substances outside of the usual course of professional practice, and that he issues controlled substance prescriptions to patients pursuant to prescription requests, submitted by patients via messaging through the Spruce Health communication platform, in exchange for payments made via applications such as "Cash App." Investigation in this case revealed JONES has issued additional prescriptions to patients, such as Schedule II controlled substance Adderall, for an additional fee per prescription.

9. JONES is a Practitioner (Medical Doctor) licensed to practice medicine in the state of Wisconsin (license 30065-20) which is regular and active with no disciplinary orders documented. JONES' license lists specialties in Internal Medicine and Emergency Medicine.

10. JONES maintains DEA Registration Number BJ1801326, granted April 1989, located at 4020 West Mequon Road, Mequon, Wisconsin 53092, which authorizes him to issue

Schedules II-V controlled substance prescriptions in Wisconsin. Investigation in this case has revealed the registered address is a single-family home and JONES' residential address.

11. In addition to the Wisconsin DEA Registration, JONES also maintains DEA Registration Number FJ4363836, located at Arizona General Hospital, 7171 South 51st Avenue, Laveen, Arizona 85339 and DEA Registration Number FJ8819318, located at Adena Greenfield Area Medical Center, 550 Mirabeau Street, Greenfield, Ohio 45123. Investigation in this case revealed JONES may conduct locum tenens work at the aforementioned locations.

12. JONES operated Jones Medical LLC from his registered address located at 4020 West Mequon Road, Mequon, Wisconsin 53092. According to the website, opioidtreatmentcenterwi.com, JONES operates "Opioid Treatment Center of Wisconsin." The website advertises the clinic as an "office-based addiction treatment with medication assisted therapy" which serves Mequon, Milwaukee, Wauwatosa, Germantown, Brookfield and the surrounding areas. The website states this approach allows patients to maintain a work/home schedule without having to physically report to a facility every one to two days for medication-assisted treatments. The website indicates the clinic provides addiction care on an-appointment basis that is convenient and effective. The website includes a video of JONES discussing addiction. The website discusses Suboxone (buprenorphine/naloxone) treatment and explains that Suboxone combines an opiate (buprenorphine) with naloxone (an opiate antagonist) and explains that naloxone is an abuse deterrent. The website does not discuss Subutex (buprenorphine only) treatment for opiate addiction. The website does not list an address for the business, but does list a phone number of 414-240-1005.

13. Investigation in this case revealed this phone number is registered to Spruce Health Inc. According to information obtained from Spruce Health, Inc., JONES has an account with

Spruce Health, Inc. and has been assigned the number 414-240-1005 since at least 2018. JONES' account is associated with JONES MEDICAL LLC (internal Spruce organization entity ID number "entity_0V1DJ59701000"); and Jerry Jones III, MD (Spruce provider entity ID number "entity_0V1DJ597O3000" and/or Spruce account ID "account_0V1DJ58RO2800")

14. Spruce Health Inc. is a healthcare communications platform. It provides HIPAA-compliant communication and document storage services, as further described below.

15. According to Spruce Health, Inc, JONES utilized 414-240-1005 to communicate with patients.

***Prescription Drug Monitoring Data***

16. As part of my investigation, I reviewed data contained within the Wisconsin Prescription Drug Monitoring Program, commonly referred to as "PDMP" (see Wis. Stat. §450.19). As a Diversion Investigator, I use the PDMP to review prescriptions of controlled substances issued and dispensed by DEA registrants and filled by individual persons of interest. The Pharmacy Examining Board ("PEB") governs the PDMP, and the Wisconsin Department of Safety and Professional Services ("DSPS") oversees the operation of the PDMP in accordance with the policies established by the PEB.

17. According to the PDMP data, under his Wisconsin DEA registration, JONES regularly issues Schedule II-V controlled substance prescriptions. PDMP data revealed, between September 2024- May 2025, JONES issued approximately 721 controlled substance prescriptions of which approximately 50 percent (%) are opioids, 24% benzodiazepines, 20% classified as "other," and 7% are stimulants. Of the opioids prescribed, approximately 90% were for buprenorphine (brand name "Subutex") and 10% were for buprenorphine with naloxone (brand name "Suboxone"). The prescriptions classified as "other" were for non-controlled substance

gabapentin. Although gabapentin is not a controlled substance at this time, it is highly abused and monitored by PEB on the PDMP. The top controlled substances issued by JONES were 8mg buprenorphine ("Subutex"), 2mg alprazolam, non-controlled substance gabapentin, and 30mg amphetamine-dextroamphetamine (brand name "Adderall"). JONES regularly issued monthly prescriptions to approximately 56 individuals. Of those individuals, approximately 43 resided over 200 miles from JONES' registered location and, of those, 38 resided in the small, remote community of Lac Du Flambeau, Wisconsin. These prescriptions were generally for the same medications: buprenorphine, alprazolam, and gabapentin. At least 19 of the patient addresses listed on the PDMP were shared by two or more individuals receiving prescriptions from JONES and at least three addresses listed three or more prescription recipients residing at one shared address. There were multiple occasions in which controlled substance prescriptions were issued two to five days early. JONES' Arizona DEA registration (FJ4363836) revealed, between August 2024- May 2025, approximately 17 controlled substance prescriptions were filled in Wisconsin for eight different individuals. Of the eight, five resided in Lac Du Flambeau. The prescriptions filled were for buprenorphine, buprenorphine-naloxone, alprazolam and gabapentin. JONES' Ohio DEA registration (FJ8819318) revealed there were no controlled substance prescriptions filled in Wisconsin. The PDMP data revealed JONES has been issuing opioid treatment medications since at least January 2019, at which time he prescribed to multiple individuals with addresses listed in northern Wisconsin and the upper peninsula of Michigan. JONES began prescribing to individuals who resided in the Lac Du Flambeau, Wisconsin area around July 2021.

***Controlled Substance Information***

17. Schedule II controlled substances are those that have a "high potential for abuse" which "may lead to severe psychological or physical dependence," 21 U.S.C. §812(b)(2). Schedule II controlled substances are the most dangerous drugs that can be prescribed for medical use. See 21 U.S.C. §§812(a)(1)(B) and (C) (defining Schedule I controlled substances as having "no currently accepted medical use in treatment in the United States" and lacking "accepted safety…under medical supervision"); 21 U.S.C. §§812(b)(3)(A), (4)(A), and (5)(A) (defining controlled substances in Schedules III, IV and V as having lower potential for abuse than Schedule II controlled substances).

18. Because Schedule II controlled substances have a high potential for abuse, Congress has enacted special statutes and regulations governing prescriptions for these drugs. For example, except in emergency situations, or when administered directly to a patient by a "practitioner," Schedule II controlled substances can be dispensed only with a "written prescription of a practitioner," 21 U.S.C. §829(a). In addition, "no prescription for a controlled substance in Schedule II may be refilled." For the distribution of a controlled substance to be authorized by law, it must be prescribed "for legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. §1306.04(a).

19. Amphetamine-dextroamphetamine (brand name "Adderall") is a Schedule II controlled substance. Adderall is a central nervous system stimulant that affects chemicals in the brain and nerves that contribute to hyperactivity and impulse control. Adderall is used to treat attention deficit hyperactivity disorder (ADHD) and narcolepsy. Adderall may be habit-forming, and this medicine is a drug of abuse.

20. Methylphenidate (brand name "Ritalin") is a Schedule II controlled substance. Ritalin is a central nervous system stimulant that affects chemicals in the brain and nerves that contribute to hyperactivity and impulse control. Ritalin is used to treat ADHD. Ritalin may be habit-forming, and this medicine is a drug of abuse.

21. Alprazolam (brand name "Xanax") is a Schedule IV controlled substance, generic name alprazolam. Alprazolam is a benzodiazepine used to treat anxiety disorders and panic disorders. Alprazolam can slow or stop breathing, especially if a person has recently used an opioid or alcohol. Misuse of alprazolam can cause addiction or overdose.

22. Gabapentin is used to treat seizures and nerve pain. It works by targeting the chemical messengers in the brain and nerves. Although gabapentin is not a controlled substance, it is highly abused and, in Wisconsin, is required to be reported to the PDMP and is closely monitored by the Wisconsin Pharmacy Examining Board (PEB).

***Complaints/Interviews***

23. In April 2024 investigators interviewed Michigan Physician Assistant, KH, who previously submitted a complaint to the Wisconsin Department of Safety and Professional Services (DSPS) regarding JONES. KH stated he was an addiction treatment provider in the upper peninsula of Michigan. He had numerous patients that received controlled substance prescriptions from JONES in the past. Three of those individuals provided KH with details regarding their interactions with JONES (ML, LJ, AP). The patients informed KH they texted JONES when they needed medications, sent their payments to him via Cash App or a similar payment application, and JONES electronically sent their prescriptions to the pharmacy. The patients told KH that JONES issued additional prescriptions for an additional payment. The patients reported they never saw

JONES in person. KH was familiar with at least two known drug dealers in the area who received controlled substance prescriptions from JONES.

24. In May 2024, investigators interviewed ML, a patient of KH. There is some open record information indicating that ML may currently have an open case for criminal trespass to a dwelling and a possible warrant for ML's arrest. ML told law enforcement that ML received JONES' phone number (414-240-1005) from someone within her "drug group," identified as SW. JONES' name was all over the place in the upper peninsula of Michigan, where ML resided. ML stated she initially called JONES via phone. She was asked to provide her name, date of birth, driver's license number and Michigan Medicaid ID number to JONES. ML informed JONES she had been on Subutex (buprenorphine) for 20 years and was addicted to it. After the initial phone call, ML texted JONES monthly when she needed prescriptions refilled and said something along the lines of "Hey. It's time for refills. Going to send the money," and JONES replied back "okay." ML never saw JONES in person, was not asked to provide her medical history and was not asked to take a drug test. ML paid approximately $250.00 for a Subutex prescription and stated JONES told her he would send her any other prescription for an additional $25.00 each. ML requested an additional prescription for 20mg Ritalin. ML paid JONES monthly via Cash App. ML referred to JONES as "Doctor Scam Artist Jones." ML stated pharmacies in Iron Mountain, Michigan (where she resided) stopped filling JONES' prescriptions. ML abused the Subutex she received from JONES and believed JONES was aware of that. ML stated "he's not helping people, he's hurting people." PDMP data revealed ML filled approximately nine prescriptions for Subutex and ten prescriptions for methylphenidate (Ritalin) issued by JONES. A comparison of ML's PDMP records and Cash App payments showed payments ranging from $240.00 to $260.00 which correlated with prescriptions issued to her by JONES for Subutex and Ritalin. In addition, there

were various $20.00 payments made. ML was convicted of several misdemeanors between 2003-2016 for Traffic-Operating While Suspended (2), Retail Fraud (2) and Domestic Violence (1). ML was also convicted of Resisting/Obstructing Police Officer in 2013 (2) and 2017 (1). All of the aforementioned charges were in Michigan.

25. In July 2024, investigators interviewed SW. After SW was discharged from her previous addiction treatment center for missing too many appointments and failing urine drug screens, she was provided with a list of addiction treatment providers. JONES' phone number was on the list. SW called JONES and was required to provide a copy of her identification card to him. At the time, SW lived in the upper peninsula of Michigan which was approximately a three-hour drive from JONES. SW told JONES the amount of money she could afford to pay each month, and he charged her a flat monthly rate, which she believed was either $250.00 or $275.00 for Subutex and Ritalin prescriptions. SW stated if you wanted more prescriptions you had to pay more money. SW knew a lot of other people that had to pay JONES a lot more money for the same prescriptions. After the initial phone call with JONES, SW texted JONES monthly when refills were due, sent him payments via Cash App, and JONES called the prescriptions into the pharmacy. SW saw JONES in person one time at his residence located in Mequon, Wisconsin. SW believed she had to see JONES in person to get the initial physical (paper) prescription for Ritalin because JONES could not call it into the pharmacy. SW was at JONES' residence less than five minutes and stated there was an office at the residence, but it wasn't a medical office. JONES made a derogatory comment to SW about bringing her mother along to the appointment. On another occasion, JONES texted SW around midnight "call me." SW did not reply to the text or call JONES and the text was never discussed. SW was not required to provide a urine drug screen. SW stated JONES' name was well-known in the area where she lived in the upper peninsula. PDMP data

revealed SW filled approximately six prescriptions for Subutex and seven prescriptions for Ritalin that were issued by JONES. A comparison of SW's PDMP records and Cash App payments showed, on average, payments ranging from $200.00- $400.00 per month. SW was convicted of two misdemeanors in Wisconsin in 2010 for Resist/Obstruct Officer and Issue of Worthless Checks <$500.00. SW was convicted in Wisconsin of the following felony offenses; Possession with Intent-Heroin <=3 grams in 2010, Possession of Narcotic Drugs in April 2022, and Possession with Intent-Heroin >10-50 grams in November 2022. In 2022, SW had charges for Possession of Methamphetamine and Possession of Cocaine dismissed but read-in.

26. In August 2024 investigators interviewed RG. RG received JONES' phone number through a friend. When s/he received prescriptions from JONES, RG resided in the upper peninsula of Michigan. RG contacted JONES via phone to establish care. After the initial phone call, RG called JONES one time per month when s/he needed prescriptions filled. RG may have texted JONES a couple of times however s/he mostly spoke with him on the phone. RG stated having JONES as a provider was "very convenient." RG never saw JONES in person and was not required to provide urine drug screens. RG believed he paid approximately $150.00 per month for appointments with JONES and paid for the visits via Cash App. Regarding paying JONES via Cash App, RG stated "it sounds crazy for a doctor now that I'm saying it." RG initially received Subutex but later added on a prescription for ADHD and nerve damage. JONES charged an additional $25.00 per month for each additional prescription. Toward the end of his treatment with JONES, RG did not use the Subutex prescriptions at all because he was using other drugs. RG stated JONES' name circled around in the upper peninsula and stated "absolutely" people would take advantage of the ease of getting prescriptions from JONES. A comparison of PDMP and Cash App payments for RG revealed RG filled approximately five prescriptions for buprenorphine and

five prescriptions for methylphenidate issued by JONES and paid $360.00 initially and then either $260.00 or $240.00 plus an additional separate $20.00 payment each month following. RG was convicted in Wisconsin of two felony offenses; Possession of Methamphetamine in June 2022 and Possession with Intent-Heroin >10-50 grams in September 2022.

27. Investigators received information from the Lac Du Flambeau, Wisconsin Tribal Police Department that a complaint was filed on or around October 2022 regarding an incarcerated individual's (VD) Subutex prescriptions being filled by someone other than VD. VD filed a complaint, while incarcerated, that his ex-girlfriend (AG) picked up prescriptions from the pharmacy that were issued to him without his permission from approximately June 2022-October 2022. Information received from the Vilas County Jail revealed VD was incarcerated from June-December 2022. VD reported he contacted JONES via phone and phone applications for his medications when he wasn't incarcerated. VD did not see JONES in person. Information obtained from the PDMP revealed approximately twelve prescriptions for 8mg buprenorphine (brand name Subutex) were issued by JONES and filled while VD was incarcerated. The PDMP showed AG also received approximately 19 prescriptions for buprenorphine under her own name from JONES. Investigators obtained prescription pick-up information from the pharmacy which revealed AG picked up VD's prescriptions at least two times while he was incarcerated. Records provided by Vilas County Jail revealed AG deposited money into VD's jail account multiple times between August 2022- September 2022. Investigators spoke with Vilas County Jail staff and were informed the prescriptions picked up by family/friends of VD were not provided to VD while he was incarcerated. If a prescription were to be picked up from a pharmacy for an inmate, it would be picked up and transported to the jail by a police officer.

28. In October 2024, investigators interviewed AG. AG stated s/he received JONES' name and phone number (414-240-1005) from either VD or a friend, AL. AG stated in order to request treatment from JONES she had to download the Spruce Health application and request an appointment. The application had options for messaging, phone calls or video calls. AG sent JONES a message requesting treatment and JONES called her back on the phone the same day. AG was required to send a copy of her driver's license to JONES. AG never saw JONES in person and said it was very convenient. AG stated she mostly sent JONES messages through the application for refills of medications and JONES replied back with messages. JONES preferred messaging over phone calls. AG believed the initial visit with JONES cost approximately $355.00 and thereafter it was $255.00 per month. AG paid JONES via Cash App. Towards the end, AG's mother paid for the visits via credit card because AG could no longer afford it. AG stated JONES was popular among individuals in the Lac Du Flambeau, Wisconsin area who abused medications and stated JONES never asked any "important questions" during visits. AG knew seven or eight others in her area that received Subutex prescriptions from JONES, at least one (AL) who likely sold the Subutex for cash. AG stated Subutex used to sell on the street for $60.00/tab but now you were lucky to get $20.00/tab in the Lac Du Flambeau area. AG stated VD was her ex-boyfriend and while VD was incarcerated his sister (BS) used to log into his Spruce Health app account, using VD's phone, and send a message to JONES requesting his Subutex. BS used the Subutex for herself before she started receiving her own prescriptions from JONES. The PDMP revealed BS received approximately 11 8mg buprenorphine (brand name Subutex) prescriptions from JONES between October 2023- July 2024. AG picked VD's prescriptions up from the pharmacy a couple of times, while he was incarcerated, and gave them to VD's mother. AG assumed these were used by BS. AG stopped receiving prescriptions from JONES because they were expensive

and she was told by friends the pharmacies stopped filling his prescriptions. AG was convicted of multiple misdemeanor offenses in Wisconsin between 2017-2025 for various crimes including; Possession of Drug Paraphernalia, Battery, Bailjumping, Retail Theft, Possession of Amphetamine/LSD/Psilocin and Possession of Cocaine. AG was convicted of one felony offense in January 2025 for Possession of Narcotic Drugs.

29. Investigators received information from the Lac Du Flambeau Tribal Police Department that there was a report of a theft of prescription medications reported by AL on or around September 2024. Three prescriptions were reported stolen from AL's residence while she was at home sleeping. The medications were for 600mg gabapentin (84 tablets), 2mg alprazolam (56 tablets), and 8mg Subutex (36 tablets). The prescription bottles remained at the residence, however, all of the medication was removed from them. The prescriptions were issued by JONES, filled on September 25, 2024 and reported stolen on September 30, 2024. AL received regular monthly prescriptions from JONES for these three medications.

30. Investigators received information from the Lac Du Flambeau Police Department there was a fatal overdose of a 32-year-old female, SK, on November 21, 2024. The medical examiner ruled the cause of death to be acute mixed alprazolam, buprenorphine, gabapentin, and bromazolam. There were gabapentin pills along with other unknown pills and bottles found at the scene, and some of the labels were removed from the bottles. The PDMP showed SK filled approximately 38 prescriptions issued by JONES between December 2023- November 2024 for 8mg buprenorphine (brand name "Subutex"), 2mg alprazolam and 600mg gabapentin. Alprazolam was last filled November 12, 2024, buprenorphine November 8, 2024 and gabapentin October 22, 2024.

31. In March 2025, investigators received a complaint from Pharmacist Delora Pufall-Porter that she received suspicious prescriptions issued by JONES at Brownstone Rx Pharmacy located in Washburn, Wisconsin. She stated JONES called her to introduce himself and asked whether Brownstone Rx would be able to fill prescriptions for his patients in the area. She stated there were prescriptions for three different individuals and all were for Subutex rather than Suboxone. Pufall-Porter stated Subutex was much more likely to be abused because individuals could inject it to get high. Anytime Pufall-Porter saw a prescription for Subutex it raised a red flag unless it was issued to an individual who was pregnant or had an allergy to Suboxone. Pufall-Porter stated she stopped filling JONES' prescriptions, and when she called JONES to notify him of this he did not seem surprised.

32. In June 2025, investigators spoke with Pharmacist Jessica Linderud who stated she stopped filling prescriptions for JONES around October 2024. She stated all of JONES' patients received prescriptions for Subutex rather than Suboxone. When she called to question JONES about this he stated his patients were either allergic or had adverse reactions to Suboxone. JONES also issued a lot of prescriptions for 2mg alprazolam. When Linderud checked the PDMP there was at least one patient who did not have a history of filling alprazolam prescriptions, however JONES prescribed the patient 2mg ( the highest dose available).

***Cash App Data***

33. Investigators reviewed Cash App data. The data revealed multiple individuals that received prescriptions from JONES paid JONES via Cash App. There were numerous individuals that made payments to JONES via Cash App and in the remarks section of the payments entered the name of a patients listed in the PDMP as JONES' patients and "appt" or similar remarks. Not all of these individuals received prescriptions from JONES, according to the PDMP. Many of the

Cash App payments correlated with dates prescriptions issued by JONES were filled. There were multiple instances in which patients made payments for "script change" or "pharmacy change." The majority of these payments for "changes" were for approximately $20.00 or $50.00.

***Information Available on Spruce Health, Inc.***

34. Investigators obtained information from Spruce Health Inc. personnel that JONES had an active account with Spruce Health, Inc. The following types of communications were exchanged by JONES MEDICAL LLC on the Spruce Health platform: SMS messages, secure (app to app) messages, faxes, phone calls, and emails. In total, there were roughly 1,633 entities/contacts that interacted with JONES MEDICAL LLC on the platform between August 18, 2018- February 20, 2025. The account was created in August 2018. There were over 22,000 text messages and over 14,000 secure messages exchanged on the application. Spruce Health Inc. assigned JONES phone number 414-240-1005.

35. Spruce Health Inc. is a healthcare communications platform designed for use by healthcare providers to communicate with patients. The Spruce Health application provides HIPAA compliance and allows providers to communicate with patients via phone system, secure app-based messaging, two-way texting, secure chat, and video telemedicine. The application also maintains contact and patient list, uploaded documents, scheduled messages, saved messages, and e-fax. Spruce Health Inc. has confirmed with investigators there is an account established by JONES that is actively used.

36. In general, providers like Spruce Health, Inc. ask each of their subscribers to provide certain personal identifying information when registering for an account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers,

e-mail addresses, and, for paying subscribers, a means and source of payment (including any credit or bank account number).

37. Providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the ACCOUNT.

38. In some cases, ACCOUNT users will communicate directly with a provider about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

39. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Spruce Health, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in

Section II of Attachment B.

## CONCLUSION

40. Based on the foregoing, there is probable cause to believe that evidence of the aforementioned crime, prescribing controlled substances outside the usual course of professional practice and not for a legitimate medical purpose, will be found in the data stored by Spruce Health, Inc, and I therefore request that the Court issue the proposed search warrant.

41. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

42. The government will execute this warrant by serving the warrant on Spruce Health Inc. Because the warrant will be served on Spruce Health, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

I swear under penalty of perjury that the foregoing is true and correct.

KERRIANNE SUNDBERG Digitally signed by KERRIANNE SUNDBERG Date: 2025.07.23 11:16:32 -05'00'

Kerianne Sundberg
Diversion Investigator, Drug Enforcement Administration

Sworn by the affiant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 24 day of July, 2025.

Stephen C. Dries

STEPHEN C. DRIES
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF WISCONSIN

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with "JONES MEDICAL LLC (internal Spruce organization entity ID number "entity_0V1DJ59701000"); and Jerry Jones III, MD (Spruce provider entity ID number "entity_0V1DJ597O3000" and/or Spruce account ID "account_0V1DJ58RO2800" that is stored at premises owned, maintained, controlled, or operated by Spruce Health Inc., a distributed company with a mailing address of 548 Market Street, PMB# 83493, San Franciso, California 94104.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be disclosed by Spruce Health, Inc.

To the extent that the information described in Attachment A is within the possession, custody, or control of Spruce Health, Inc, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that may have been deleted but are still available to Spruce Health, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Spruce Health, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A for the time period of January 1, 2018 to the date of this warrant's execution:

a. All records affiliated with Jerry JONES III, MD; Jones Medical LLC; phone number 414-240-1005; email jjones5050@hotmail.com; phone number 414-807-5050; Internal Spruce organization entity ID number "entity_0V1DJ59701000"; Spruce provider entity ID number "entity_0V1DJ597O3000"; associated Spruce account ID "account_0V1DJ58RO2800."

b. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c. The types of service utilized by the user;

d. All records or other information maintained in the account, including SMS messages, secure (app to app) messages, faxes, phone calls, emails, video recordings, voice recordings, document uploads, payment information, contact list, patient list, and patient files or medical records, etc.;

e. All records pertaining to communications between Spruce Health, Inc. and any person regarding the account, including contacts with support services and records of actions taken.

Spruce Health, Inc. is hereby ordered to disclose the above information to the government within 7 days of the issuance of this warrant.

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) involving Jerry JONES III, MD (the Spruce Health, Inc. account holder and suspect) since January 1, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Communications regarding the issuance of prescriptions, the discussion and arrangement of the distribution, sale and/or trade of controlled substances between said suspects and potential communications with other sources regarding controlled substances.

(b) Evidence indicating JONES' knowledge of the standards for controlled-substance prescribing and/or his provision of medical care, advice, or direction via the platform;

(c) Evidence indicating how and when the Spruce Health, Inc. account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Spruce Health, Inc. account owner;

(d) Evidence indicating the Spruce Health, Inc. account owner's state of mind as it relates to the crime under investigation;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

(f) The identity of the person(s) who communicated with JONES about matters relating to the distribution, including issuance of a controlled substance prescription, including records that help reveal their whereabouts; and

(g) Patient files, prescription records, medical reports, notes of medical personnel and staff members, office notes, progress notes, medical examination notes, medical diagnoses, appointment records, patient sign in sheets, billing records, test results, laboratory tests, laboratory results, photographs, x-rays, physician orders, history and physical forms, social worker notes, treatment plans, referrals, consultations, correspondence, patient contracts, patient information, demographic information, and certificates of medical necessity.